
FILED
2012 Mar-12  PM 12:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, )<br><br>Plaintiff, )<br><br>vs. )<br><br>GFC CONSTRUCTION, INC.; CDT, L.L.C., )<br><br>Defendants. ) | CASE NO.  2:11-CV-1605-SLB |

## MEMORANDUM OPINION

This case is presently before the court on Motion to Dismiss for Lack of Jurisdiction for Failure to Meet the Statutory Requirement for the Amount in Controversy Under 28 U.S.C.A. 1332, filed by defendant GFC Construction.  (Doc. 7.)  Pennsylvania National Mutual Casualty Insurance Company [Penn National], has brought action against defendants, GFC Construction and CDT, LLC, seeking a declaratory judgment that it has no duty to defend or indemnify its insured, GFC Construction, against the claims brought by CDT in state court.   GFC Construction asks the court to dismiss Penn National's declaratory judgment action "for lack of subject-matter jurisdiction as the amount in controversy does not exceed the sum or value of $75,000.00 as required by 28 U.S.C.A. 1332." (Doc. 7 at 1.) Upon consideration of the record, the submissions of the parties, and the relevant law, the court is of the opinion that GFC Construction's Motion to Dismiss, (doc. 7), is due to be denied.

# I.   RULE 12(b)(1) MOTION TO DISMISS STANDARD

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may move the court to dismiss a case if the court lacks jurisdiction over the subject matter of the case. Penn National, as the party invoking jurisdiction, bears the burden of establishing the court's subject matter jurisdiction. *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir.1994).

Attacks on subject matter jurisdiction under Rule 12(b)(1) occur in two forms: facial attacks and factual attacks. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990); *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731 (11th Cir. 1982). "'Facial attacks' on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true." *McMaster v. United States*, 177 F.3d 936, 940 (11th Cir. 1999)(quoting *Lawrence*, 919 F.2d at 1528-29); *see also Carmichael v. Kellogg, Brown & Root Services, Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009)("Facial challenges to subject matter jurisdiction are based solely on the allegations in the complaint.  When considering such challenges, the court must, as with a Rule 12(b)(6) motion, take the complaint's allegations as true." (citing *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003)).  Therefore, "when faced with a 12(b)(1) challenge to the face of a complaint, the plaintiff can survive the motion by showing any arguable basis in law for the claim made." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996).  "Factual attacks, on the other hand, challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters

2

outside the pleadings, such as testimony and affidavits, are considered.'" *Cook Oil Co., Inc. v. United States*, 919 F. Supp. 1556, 1559 (M.D. Ala. 1996)(quoting *Lawrence*, 919 F.2d at 1529).   If the defendant raises a factual attack, the court is "free to weigh the facts and [is] not constrained to view them in the light most favorable to [plaintiff]." *Carmichael*, 572 F.3d at 1279.

GFC Construction's challenge to the court's subject-matter jurisdiction in a facial challenge.

## II. <u>STATEMENT OF FACTS</u>

According to Penn National's Complaint,

5.   Between 2004 and 2008, CDT, purchased a number of undeveloped lots in the Cherokee Bend subdivision in Tuscaloosa, Alabama, from Hillcrest Pointe, LLC ("Hillcrest").   Hillcrest had hired GFC to perform various construction work at Cherokee bend including the installation of water and sewer infrastructure.   On May 22, 2009, CDT sued Hillcrest, among others. CDT alleged that Hillcrest had represented that the lots were fully developed but that some lots did not contain utility hookups.   On April 10, 2010, CDT amended its complaint to add GFC as a defendant.   CDT alleges that when it began construction on the undeveloped lots it had purchased, it discovered that GFC had failed to install sewer and water taps on some lots.

6.   Penn National issued a commercial general liability policy No. CL90607852 (the "Policy"), insuring GFC for the policy period of October 1, 2009 through October 1, 2010.   Penn National is currently providing GFC with a defense under a reservation of rights.

(Doc. 1 ¶¶ 5-6 [footnote omitted].)   Penn National alleges, "The Court has jurisdiction over this matter . . . because the amount in controversy exceeds $75,000.00, exclusive of costs and interest, and because there exists complete diversity amoung the Plaintiff and the

Defendants." (Doc. 1 ¶ 4.) CDT's answer to this allegation was, "Denied. ???" (Doc. 3 ¶

4.) Also, Penn National alleged, "In this case, on October 22, 2010, CDT's counsel made

a settlement demand of $150,000 to counsel for GFC. As a result, the recovery sought by

CDT satisfies the amount in controversy requirement." (Doc. 1 ¶ 13 [citing doc. 1, Ex. A and

*Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1212 n.62 (11th Cir. 2007)].) CDT's answer

to this allegation was, "Defendant denies that the amount of controversy exceeds $75,000.00.

????" (Doc. 3 ¶ 13.)

The settlement demand from CDT, which is attached to the Complaint, states, in

pertinent part –

> . . . Hillcrest Pointe retained the services of GFC Construction, Inc.
> ("GFC") for the construction of various components of the Cherokee Bend
> Subdivision including the water and sewer infrastructure. Hillcrest Pointe has
> assigned any and all claims that it may have against GFC to CDT.
>
> . . . Under the purchase contracts whereunder CDT purchased said lots
> from Hillcrest Pointe, Hillcrest Pointe warranted that all utilities and other
> infrastructure for the platted lots had been completed. However, as CDT
> began constructing homes on the subject lots it discovered that sewer taps and
> water taps had not been installed on many of the lots. Upon further inspection
> CDT discovered that no sewer taps had been installed on twelve lots, and that
> no water meter taps had been built on twenty-four of the lots.
>
> . . .
>
> With respect to CDT's damages, to date CDT has installed at its own
> expense the required sewer laterals and water meters on approximately half of
> the lots in question, and will incur further expense relative to the remaining
> lots as it continues to construct and sell new homes. Based upon the repairs
> that have occurred to date, the cost to install a sewer lateral has averaged
> approximately $5,000.00 per lot, and for water meters $400.00 per lot. Thus,

CDT can immediately establish $69,600.00 in damages related to the direct cost of installing the subject infrastructure.

CDT has suffered further and additional damage by virtue of the fact that its attempts to dedicate the subdivision improvements to the City of Moundville have proven unsuccessful due in large part to incomplete infrastructure improvements. As a result of the City of Moundville's refusal to accept these improvements for maintenance and repairs, CDT has been forced to expend monies against maintenance and repairs that would otherwise have been the responsibility of the City of Moundville. CDT estimates these monies to total approximately $30,000 and will have no difficulty substantiating the same at a trial of this matter. We have mentioned only the damages [that] cannot be refuted. For instance, the water lines throughout the subdivision were not installed properly, primarily related to the insufficient depth of the same, and has resulted in over 20 water line breaks for which the City of Moundville has billed . . . CDT. Further, the pressurized sewer main that travels the entire north side of the subdivision property was installed at a depth of approximately 24 inches despite that the plans and corresponding regulatory requirements call for the main to be a minimum of 48 inches deep. Thus, if this matter proceeds to litigation and additional experts are retained for the purpose of further inspecting GFC's work product and illuminating these problems to the City of Moundville, GFC's potential liability may grow exponentially. Obviously, additional damages will be asserted and supported by expert testimony should the case go forward.

> . . .

In light of the clarity of the facts of this case relative to the undisputable evidence of liability and damages referenced herein, and the relative ease with which CDT's damages can be substantiated and proven, we believe it to be in the best interest of all parties to explore the possibility of a settlement of this matter at this juncture. We believe that our client would be in a position at this stage to settle its claims for a more favorable amount than would be the case if the parties proceeded [into] protracted litigation. Thus, the Plaintiff respectfully asserts a settlement demand of $150,000.00 for a pro tanto settlement with GFC. We believe this to be a very, very reasonable opening demand and hope that the same demonstrates the good faith with which CDT is willing to engage in this effort to settle these claims.

(Doc. 1, Ex. A at 2-3.)

## III. DISCUSSION

The Eleventh Circuit has held:

> "Federal courts are courts of limited jurisdiction." *Burns v. Windsor Ins., Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).  In order to invoke a federal court's diversity jurisdiction, a plaintiff must claim, among other things, that the amount in controversy exceeds $75,000.  28 U.S.C. § 1332.  "When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective." *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000)(citation omitted).  A plaintiff satisfies the amount in controversy requirement by claiming a sufficient sum in good faith.  *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938).

> Generally, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Red Cab Co.*, 303 U.S. at 289.  However, where jurisdiction is based on a claim for indeterminate damages, the *Red Cab Co.* "legal certainty" test gives way, and the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum. *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356-57 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072-77 (11th Cir. 2000).

*Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003).

GFC Construction contends that Penn National has not satisfied the amount in controversy because, in its Answer, CDT denied that the amount in controversy exceeded $75,000, and because the settlement letter is "puffery" and too vague to support a finding that the amount in controversy exceeds $75,000.

The court notes that CDT's Answer to Penn National's Complaint contains denials of the paragraphs asserting the amount in controversy is satisfied; however, such denials are followed by question marks. (*Compare* doc. 1 ¶¶ 4, 13 *with* doc. 3 ¶¶ 4, 13.) Certainly, these enigmatic responses do not compel a finding that the amount in controversy is less than $75,000.00.

GFC Construction contends that this court should give only "minimal weight to the contents [of CDT's demand letter, (doc. 1, Ex. A),] because of its puffery and vague settlement offer." (Doc, 11 at 5.)

> While a "settlement offer, by itself, may not be determinative, it counts for something." *Burns* [*v. Windsor Ins. Co.*], 31 F.3d [1092,] 1097 [(11th Cir. 1994)]. Therefore, a "settlement letter is admissible evidence of the amount in controversy at the time of removal." *Bankhead v. Am. Suzuki Motor Corp.*, 529 F. Supp. 2d 1329, 1333 (M.D. Ala 2008)(Thompson, J.). To be sure, "[s]ettlement offers commonly reflect puffing and posturing." *Jackson v. Select Portfolio Servicing, Inc.*, [651 F. Supp. 2d 1279, 1281] (S.D. Ala. July 31, 2009)(Steele, J.); *see also Standridge v. Wal-Mart Stores, Inc.*, 945 F. Supp. 252, 257 (N.D. Ga. 1996)(O'Kelley, J.)("[P]laintiff's letter is nothing more than posturing by plaintiff's counsel for settlement purposes and cannot be considered a reliable indicator of the damages plaintiff is seeking."). "On the other hand, settlement offers that provide 'specific information . . . to support [the plaintiff's] claim for damages' suggest the plaintiff is 'offering a reasonable assessment of the value of [his] claim' and are entitled to more weight." *Jackson*, [651 F. Supp. 2d at 1281] (quoting *Golden Apple Management Co., Inc. v. GEAC Computers, Inc.*, 990 F. Supp. 1364, 1368 (M.D. Ala. 1998)(Carroll, M.J.)); *see also Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002)("A settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim.").

*Boland v. Auto-Owners Ins. Co.*, Civil Action No. 1:09cv976-MHT, 2009 WL 4730681, *3 (M.D. Ala. Dec. 7, 2009). "[W]hen the settlement offer reflects an honest assessment of the

value of the plaintiff's claims" the court may consider it as persuasive evidence of the actual amount in controversy. *Ford v. State Farm Mut. Auto. Ins. Co.*, Civil Action No. 08-403-JVP-CN, 2009 WL 790150, *3 n.6 (M.D. La. Mar. 25, 2009)(citing *Pollet v. Sears Roebuck and Co.*, 46 Fed. Appx. 226 (5th Cir. 2002); *Hartford Insurance Group v. Lou-Con Inc.*, 293 F.3d 908 (5th Cir. 2002); *Wilson v. Belin*, 20 F.3d 644, 651 n.8 (5th Cir.1994)); *see also Mathena v. Doyle*, 2008 WL 718144, *2 (S.D. Ala. , 2008)("[S]ettlement offers that provide specific information to support the plaintiff's claim for damages suggest the plaintiff is offering a reasonable assessment of the value of her claim and are entitled to more weight.")(citations and internal quotations omitted).

As to CDT's settlement letter, the court notes that it contains sufficient details to show that CDT's damages exceed $75,000. Specifically, the letter states that CDT has spent or will spend $69,600, to install sewer lateral lines on 12 lots,[1] and to install water meters on 24 lots.[2] Also, the settlement letter states that CDT estimates it has spent or will spend $30,000 on maintenance and repair of infrastructure improvements. These specific items of damages, totaling $99,600, demonstrate, by a preponderance of the evidence, that the amount in controversy between CDT and GFC Construction exceeds $75,000. *See*, *e.g.*, *Palonder v. K Mart Corp.*, No. 8:10-CV-2697-T-17EAJ, 2011 WL 2192817, *1 (M.D. Fla. June 6, 2011); *Castellanos v. Target Corp.*, No. 10-62456-CIV, 2011 WL 384292, *3 (S.D. Fla. Feb.

---

[1]Twelve lots needed sewer lateral lines at a cost of $5,000 each, which equals $60,000.

[2]Twenty-four lots need water meters at a cost of $400 each, which totals $9,600.

3, 2011).  Moreover, GFC Construction has offered no evidence to disprove or refute the specific items of damages contained in the settlement letter.

Therefore, GFC Construction's Motion to Dismiss, (doc. 7), will be denied.

## <u>CONCLUSION</u>

For the foregoing reasons, the court is of the opinion that the amount in controversy exceeds $75,000, and GFC Construction's Motion to Dismiss for Lack of Jurisdiction for Failure to Meet the Statutory Requirement for the Amount in Controversy Under 28 U.S.C.A. 1332, (doc. 7), is due to be denied.   An Order denying the Motion to Dismiss, (doc. 7), will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 12th day of March, 2012.


SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE